| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| ------------------------------------------------------------- X | DOC #: |
| JONATAN LEANDOER HÅSTAD, personally : | DATE FILED: 3/15/2019 |
| known as YUNG LEAN, : | |
| Plaintiff, : | |
| : | 17-CV-2518 (VEC) |
| : | |
| -against- : | OPINION AND ORDER |
| : | |
| HIPPOS IN TANKS, LLC, and STEVEN : | |
| MACHAT, : | |
| : | |
| Defendants. : | |
| ------------------------------------------------------------- X | |

VALERIE CAPRONI, United States District Judge:

Jonatan Leandoer Hastad has sued Hippos In Tanks, LLC and Steven Machat for copyright infringement, breach of contract, a declaratory judgment, and an accounting. *See* Compl., Dkt. 1. Defendants have counterclaimed for breach of contract and an accounting. *See* Defs.' Ans., Dkt. 23, ¶¶ 157–168. Plaintiff has moved for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56. *See* Pl.'s Notice of Mot., Dkt. 35. For the following reasons, Plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[1]

### I. The Parties' Relationship in 2014 and 2015

Plaintiff is a Swedish hip-hop artist. *See* Pl.'s 56.1 Stmt. ¶ 2; Defs.' 56.1 Stmt. ¶ 2. Hippos In Tanks, LLC ("HIT") is a record label owned by Machat. *See* Pl.'s 56.1 Stmt. ¶ 5;

---

[1] All facts stated herein are undisputed unless otherwise stated. The Court will refer to the parties' submissions using the following abbreviations: Plaintiff's Local Civil Rule 56.1 Statement, Dkt. 42, as "Pl.'s 56.1 Stmt."; the Declaration of Jonathan Koby in Support of Plaintiff's Motion, Dkt. 41, as "Koby Decl."; the Declaration of Jonathan Leandoer Hastad in Support of Plaintiff's Motion, Dkt. 40, as "Hastad Decl."; the Declaration of Oskar Ekman in Support of Plaintiff's Motion, Dkt. 37, as "Ekman Decl."; the Declaration of Gary Adelman in Support of Plaintiff's Motion, Dkt. 36, as "Adelman Decl."; the Declaration of Emilo Fagone in Support of Plaintiff's Motion, Dkt. 38, as "Fagone Decl."; the Declaration of Aaron Freeman, Dkt. 39, as "Freeman Decl."; Plaintiff's Memorandum of Law in Support of His Motion, Dkt. 43, as "Pl.'s Mem. of Law"; Plaintiff's Reply Memorandum of Law in Further Support of His Motion, Dkt. 51, as "Pl.'s Reply Mem. of Law"; Defendants' Local

Defs.' 56.1 Stmt. ¶ 5; Machat Decl. ¶ 16. Between 2014 and 2015, the parties worked together to produce and publicize Plaintiff's music. *See* Pl.'s 56.1 Stmt. ¶¶ 6–9; Defs.' 56.1 Stmt. ¶¶ 6–9. In the fall of 2014, Plaintiff released an album, *Unknown Memory*, on Defendants' label; the album was distributed through a third party, Redeye Distribution ("Redeye"), pursuant to an agreement between Redeye and HIT (the "Redeye-HIT Agreement"). *See* Pl.'s 56.1 Stmt. ¶¶ 4, 7, 41; Defs.' 56.1 Stmt. ¶¶ 4, 7, 41. During this time, Redeye also distributed other records and works of Plaintiff (together with *Unknown Memory*, the "Existing Materials") pursuant to the Redeye-HIT Agreement. *See* Pl.'s 56.1 Stmt. ¶ 41; Defs.' 56.1 Stmt. ¶ 41. The royalties that Plaintiff earned from sales of the Existing Materials were collected by Redeye and paid to HIT. *See* Pl.'s 56.1 Stmt. ¶ 15; Defs.' 56.1 Stmt. ¶ 15; Freeman Decl. ¶ 8. Throughout 2014 and early 2015, Plaintiff also partnered with Defendants on an international tour and on producing other works of music. *See* Pl.'s 56.1 Stmt. ¶¶ 8–9; Defs.' 56.1 Stmt. ¶¶ 8–9.

In mid-2015, the parties' relationship broke down. *See* Pl.'s 56.1 Stmt. ¶¶ 15–20; Defs.' 56.1 Stmt. ¶¶ 15–20. Plaintiff alleges that Defendants failed to pay him his share of royalties for the Existing Materials during this time. *See* Pl.'s 56.1 Stmt. ¶ 15; Hastad Decl. ¶ 11. Defendants allege that Plaintiff failed to supply them with certain accounting materials that they needed in order to calculate Plaintiff's share of the royalties. *See* Machat Decl. ¶ 59. The parties' relationship further deteriorated in January 2016, when Plaintiff accused Defendants of releasing his recordings without authorization and of forging his signature on a distribution contract. *See* Pl.'s 56.1 Stmt. ¶¶ 21–33; Defs.' 56.1 Stmt. ¶¶ 21–33.

---

Civil Rule 56.1 Statement, Dk. 50, as "Defs.' 56.1 Stmt."; and the Declaration of Steven Machat in Opposition to Plaintiff's Motion, Dkt. 49, as "Machat Decl."

## II.    The Settlement Agreement

In February or March 2016, the parties executed a Settlement and Release Agreement in an attempt to resolve their disputes. *See* Hastad Decl. Ex. 1 (the "Settlement Agreement"); *see also* Pl.'s 56.1 Stmt. ¶¶ 35–36; Defs.' 56.1 Stmt. ¶¶ 35–36; Machat Decl. ¶¶ 21, 43. Although the Settlement Agreement is not a model of clarity, it appears to contemplate that Plaintiff and Defendants each expected to receive royalties from various record distributors in connection with the Existing Materials and another album, entitled *Warlord*. *See* Settlement Agreement § 2(b), 2(f). The Settlement Agreement requires the parties to share these royalties in agreed-upon proportions for a period of time. *See id.* The Settlement Agreement also requires the parties to take steps to ensure that each side receives various accountings and other documentation relating to Plaintiff's music. *See id.* §§ 2(d), 4(b).

The Settlement Agreement imposes two obligations on Defendants: they are required to pay Plaintiff a share of any royalties on the Existing Materials that they receive during the term of the Redeye-HIT Agreement, *see* Settlement Agreement § 2(f); and they are required to provide to Plaintiff all accounting statements, copies of recordings, and other materials relating to Plaintiff's music, *see id.* § 4(b). Plaintiff has three obligations under the Settlement Agreement: he was required to pay Defendants a flat fee of $15,000, *see id.* § 2(a); he is required to pay Defendants a share of any royalties on the Existing Materials and *Warlord* that he receives during the agreed-upon period, *see id.* § 2(b); and he is required to instruct his record distributors to remit to Defendants certain other payments and accountings owed to Defendants, *see id.* § 2(d).

Importantly, Plaintiff's obligation to pay Defendants their share of royalties, pursuant to § 2(b) of the Settlement Agreement, is subject to two conditions: first, that Defendants pay

Plaintiff *his* share of any Existing Materials royalties that Defendants receive pursuant to the Redeye-HIT Agreement and, second, that Defendants not otherwise be "in breach" of the Settlement Agreement. *See id.* § 2(b).[2]

Additionally, in the Settlement Agreement, the parties agreed that "all other agreements" that they had previously entered into with each other were "terminated ab initio." *Id.* § 1. The Settlement Agreement also contained a general release provision, whereby the parties agreed to release each other from "any and all claims" (except those arising out of the Settlement Agreement). *Id.* §§ 3, 5(b). Additionally, the Settlement Agreement contained a merger clause, *id.* § 5(f), a clause prohibiting oral modifications, *id.*, and a representation that each party had signed the Settlement Agreement "freely," "voluntarily," and with the advice of counsel, *id.* § 5(a). The Settlement Agreement stated that the parties had not "been influenced to any extent whatsoever" in signing it "by any party . . . except for those representations, statements and promises expressly set forth herein." *Id.* § 5(a).

## III. The Parties' Allegations

Following execution of the Settlement Agreement, Plaintiff paid $15,000 to Defendants as required by § 2(a) of the Settlement Agreement. *See* Pl.'s 56.1 Stmt. ¶¶ 54–55; Defs.' 56.1 ¶¶ 54–55; Machat Decl. ¶ 90. According to Plaintiff, Defendants breached the Settlement Agreement by failing to pay Plaintiff his share of the Existing Materials royalties that Defendants received from Redeye, as required by § 2(f) of the Settlement Agreement. *See* Pl.'s 56.1 Stmt.

---

[2] Section 2(b) of the Settlement Agreement states, in relevant part, that "[p]rovided that [Defendants are] not in breach of this Agreement and subject to paragraph 2(f) below, [Plaintiff] shall pay [Defendants]" certain shares of royalties on the Existing Materials and on *Warlord*. Section 2(f), in turn, provides that until the Redeye-HIT Agreement has expired, "[Defendants] will pay to [Plaintiff] (and will irrevocably instruct Redeye to pay to [Plaintiff]) [Plaintiff's] share of all monies which otherwise would have been due and payable to [Plaintiff] in connection with the Existing Materials pursuant to paragraph 2(b)(i) above."

4

¶¶ 56–66. Plaintiff also alleges that Defendants failed to provide him with certain accountings and other materials, as required by § 4(b) of the Settlement Agreement. *See id.* Defendants, for their part, allege that Plaintiff breached the Settlement Agreement by failing to pay them *their* share of the royalties from the Existing Materials and *Warlord*, as required by § 2(b) of the Settlement Agreement, and by failing to instruct his record distributors to remit to Defendants certain accountings and other payments, as required by § 2(d) of the Settlement Agreement. *See* Machat Decl. ¶¶ 88, 90, 93, 95, 98–105.

In late 2016, the parties provided each other with notices of breach. *See* Pl.'s 56.1 Stmt. ¶ 72; Defs.' 56.1 Stmt. ¶ 72; Machat Decl. ¶ 88. In March 2017, as disputes between the parties escalated, Defendants threatened to release a number of Plaintiff's recordings without authorization. *See* Pl.'s 56.1 Stmt. ¶¶ 77–78; Defs.' 56.1 Stmt. ¶ 77. On April 7, 2017, Plaintiff filed the Complaint and moved for a temporary restraining order ("TRO") to enjoin Defendants from releasing Plaintiff's recordings. *See* Dkts. 1, 3. On April 10, 2017, the Court entered the TRO, *see* Dkt. 10, which the Court later converted into a permanent injunction on consent of the parties, *see* Dkt. 12.

Plaintiff brings claims for copyright infringement (Count I), breach of contract (Count II), a declaratory judgment (Count III), and an accounting (Count IV). *See* Compl. ¶¶ 63–116. Defendant brings counterclaims for breach of contract (Count I) and an accounting (Count II). *See* Defs.' Ans. ¶¶ 157–168. Plaintiff has moved for summary judgment only on his breach of contract claim and on Defendants' counterclaims. *See* Pl.'s Notice of Mot.

# DISCUSSION

## I. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation marks omitted). Courts "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009)) (alteration omitted).

Affidavits submitted to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court." *Wahad v. F.B.I.*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (citing *United States v. Alessi*, 599 F.2d 513, 514–15 (2d Cir. 1979)); *see also Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010).

"[U]ltimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary judgment motion." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996). Put differently, a party opposing summary judgment cannot demonstrate the existence of a genuine question of fact by making "assertions that are conclusory

or based on speculation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (citations omitted) (citing *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996)); *see also Hicks*, 593 F.3d at 167. "If a party . . . fails to properly address another party's assertion of fact" as required by these rules, the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

## II.  Defendants' Response Fails to Comply with Local Civil Rule 7.1

This District's Local Civil Rule 7.1 states that all motions and oppositions to motions must contain "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion" or opposition. Local Civil Rule 7.1(a)–(b). "It is well-established that [a]n affirmation alone will not satisfy the requirements of Rule 7.1." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. R & C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, at *3–4 (E.D.N.Y. Feb. 7, 2018) (internal quotation marks omitted) (collecting cases). In certain cases, "[f]ailure to file a memorandum of law in opposition to the opposing party's motion is, by itself, a sufficient basis to grant the motion." *Id.*; *see also, e.g.*, *Assets Recovery 23, LLC v. Gasper*, No. 15-CV-5049, 2017 WL 3610568, at *3 (E.D.N.Y. July 25, 2017), *report and recommendation adopted*, 2017 WL 3610517 (E.D.N.Y. Aug. 21, 2017); *Cea v. Access 23 TV*, No. 11-CV-3791, 2015 WL 5474070, at *1 (S.D.N.Y. Sept. 15, 2015).[3]

In response to Plaintiff's motion for summary judgment, Defendants submitted a counterstatement of disputed facts, pursuant to Local Civil Rule 56.1, and a declaration attested

---

[3]  *Cf. Quinn v. St. Louis Cty.*, 653 F.3d 745, 752 (8th Cir. 2011) (discussing a non-movant's obligation "to provide meaningful legal analysis" in response to a motion for summary judgment); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016) (deeming claims abandoned because the plaintiff's memorandum of law was "bereft of any mention of the . . . claims, let alone argument why these claims should survive summary judgment" (emphasis omitted)); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (deeming claims abandoned when the plaintiff failed to discuss them in his memorandum of law, even though he discussed them in his Rule 56.1 statement).

to by Machat. *See* Dkts. 49, 50. The counterstatement of disputed facts did not comply with this Court's Individual Practices in Civil Cases, Rule 4(H)(ii). Defendants also failed to submit a memorandum of law or any other materials. The materials that Defendants did submit are, in chief, a series of convoluted and conclusory assertions without any citations to the record or legal argument. Because Defendants' response falls far short of the standards required by the Local and Federal Rules, the Court need not consider it.

Nevertheless, because "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion," Fed. R. Civ. P. 56, Advisory Committee Note (2010), the Court must independently consider whether Plaintiff has met his burden for summary judgment. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").[4]

### III. Plaintiff's Motion for Summary Judgment on His Claim for Breach of Contract Is Granted in Part and Denied in Part

#### A. Plaintiff's Motion

To prove breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan*

---

[4] After Plaintiff's motion was fully briefed, Defendants filed a letter requesting leave to file a memorandum of law as a sur-reply. *See* Defs.' Ltr. (May 25, 2018), Dkt. 52. Defendants argued that Plaintiff had unexpectedly "moved from arguing about whether material facts are disputed . . . into the realm of legal argument." *Id.* This argument is baffling. Defendants apparently failed to read the full text of Federal Rule of Civil Procedure 56, which states that summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*." Fed. R. Civ. P. 56(a) (emphasis added). It goes without saying that Plaintiff was permitted—indeed, required—to submit legal argument in support of his motion. Accordingly, Defendants' application to file a sur-reply is denied.

8

*Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

There is no question of fact that Defendants are liable to Plaintiff for breach of contract. Defendants concede the existence of an agreement, as they do not dispute that Machat and Plaintiff executed the Settlement Agreement; indeed, Plaintiff has submitted the Settlement Agreement to this Court, and both parties' signatures are clear on the face of it. *See* Settlement Agreement; Pl.'s 56.1 Stmt. ¶¶ 35–36; Defs.' 56.1 Stmt. ¶¶ 35–36; Machat Decl. ¶¶ 21, 43. Defendants also concede that Plaintiff at least partially performed his obligations under the Settlement Agreement, as Plaintiff paid Defendants $15,000 after the Settlement Agreement was signed. *See* Settlement Agreement § 2(a); Pl.'s 56.1 Stmt. ¶¶ 54–55; Defs.' 56.1 ¶¶ 54–55; Machat Decl. ¶¶ 71, 89–90, 95.

Additionally, Plaintiff has offered evidence that Defendants breached the Settlement Agreement: specifically, that Defendants failed to pay Plaintiff his share of the Existing Materials royalties that Defendants received from Redeye, as required by § 2(f) of the Settlement Agreement, and that Defendants failed to provide Plaintiff with the accountings and other materials required by § 4(b) of the Settlement Agreement.[5] *See* Pl.'s 56.1 Stmt. ¶¶ 56–66; Hastad Decl. ¶ 11. Defendants offer no evidence to dispute Plaintiff's assertions and, in fact, admit some of them. *See* Defs.' 56.1 Stmt. ¶¶ 56–66; Machat Decl. ¶¶ 83, 106.

Although there is no question of fact that Defendants are liable for this claim, Plaintiff has failed to offer sufficient evidence to prove the amount of his damages. Plaintiff asserts that

---

[5] Plaintiff has provided to the Court a wire transfer confirmation showing that he made the $15,000 payment to Defendants, *see* Ekman Decl. ¶ 13; *id.* Exs. 2–3; affidavits from his managers, who state that Defendants failed to provide Plaintiff the Existing Materials royalties and accounting materials, *see* Ekman Decl. ¶¶ 5, 7, 14; Fagone Decl. ¶¶ 2–7, 13; and an affidavit from Redeye's records custodian, who states that Redeye paid substantial royalties to HIT in connection with Plaintiff's works, *see* Freeman Decl. ¶ 8.

he is owed $157,479.83 in damages, representing the amount that Redeye paid to HIT between the date that the Settlement Agreement became effective and the date of Plaintiff's motion. *See* Pl.'s 56.1 Stmt. ¶ 74. But Plaintiff has not explained why he is entitled to the full amount that Redeye paid to HIT, inasmuch as the Settlement Agreement affords Plaintiff only a portion of the royalties. *See* Settlement Agreement § 2(b), 2(f). Further, Plaintiff has not explained what, if any, portion of his share of these royalties Defendants have already paid to him.[6] Plaintiff also has not provided any details or documentation about the sales or recordings to which the $157,479.83 specifically relates.[7] Under these circumstances, Plaintiff has not shown that he is entitled to $157,479.83 in damages as a matter of law.

Moreover, Plaintiff has not explained what, if any, remedy he requests for Defendants' breach of § 4(b) of the Settlement Agreement (which requires Defendants to provide Plaintiff with accountings and other materials). Indeed, although it is undisputed that Defendants failed to provide Plaintiff with *some* accountings required by the Settlement Agreement, the record is ambiguous regarding *which* accountings each side has provided to the other. *See, e.g.*, Pl.'s 56.1 Stmt. ¶¶ 15, 60; Ekman Decl. ¶¶ 7, 14; Fagone Decl. ¶¶ 7, 13; Adelman Decl. Ex. 3 at 41; Machat Decl. ¶¶ 59, 90.

Accordingly, as to Plaintiff's claim for breach of contract, the Court GRANTS summary judgment to Plaintiff as to liability but DENIES summary judgment as to damages.

---

[6] Plaintiff's managers state generally that HIT "never paid Plaintiff the monies from Redeye that [HIT] was supposed to pay to Plaintiff," but they fail to specify the amount of money that was due but was not paid. Ekman Decl. ¶ 14; *see also* Fagone Decl. ¶ 13.

[7] Plaintiff has provided an email and attachment from Redeye to Machat, which appears to indicate that Redeye paid Machat $156,962.25. *See* Adelman Decl. Ex. 10; *see also* Adelman Decl. Ex. 3 at 107. Plaintiff, however, has not explained in any detail to what recordings and works those payments relate, nor has Plaintiff explained to what share of this amount he is entitled.

### B. Defendants' Arguments

In response to Plaintiff's motion, Defendants argue that Plaintiff fraudulently induced them to enter into the Settlement Agreement; that Plaintiff lacked the requisite mental capacity to enter into the Settlement Agreement; and that Plaintiff failed to provide Defendants with certain accountings that they needed in order to remit royalty payments to Plaintiff. As discussed, Defendants offer no legal reasoning in support of these assertions; accordingly, the Court is under no obligation to consider them. The Court also notes that these assertions would all be affirmative defenses to Plaintiff's breach of contract claim; thus, they should have been pleaded in Defendants' Answer. *See* Fed. R. Civ P. 8(c). Because Defendants failed to plead any of these defenses in their Answer, *see* Defs.' Ans., the defenses have been waived. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003).

Even if these defenses had not been waived, and even if their legal basis were properly articulated, they are meritless. As to the fraud-in-the-inducement defense, Defendants argue that Plaintiff and his attorneys made a number of false promises to induce Defendants to sign the Settlement Agreement. *See, e.g.*, Machat Decl. ¶¶ 34–35, 45–48, 52, 60, 66–67, 69, 72, 81, 88. But Defendants offer no non-conclusory facts from which a jury could infer that Plaintiff intended those representations to defraud Defendants or that Defendants' reliance on the representations was reasonable—both of which are elements of a fraud-in-the-inducement defense. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006); *Old Clinton Corp. v. 502 Old Country Rd., LLC*, 5 A.D.3d 363, 364–65, 773 N.Y.S.2d 410, 412–13 (2d Dep't 2004).[8] Accordingly, even if this defense were properly before the Court, it would fail.

---

[8] Additionally, because the Agreement contains a merger clause, Defendants would likely not be permitted to offer parol evidence in support of this defense. *See Wall*, 471 F.3d at 416 n.5.

Next, Defendants assert that Plaintiff lacked the mental capacity to enter into the Settlement Agreement. *See* Machat Decl. ¶¶ 3–4, 34, 36–40. It is not clear why this argument helps Defendants, inasmuch as they have counterclaimed for breach of contract based on the same agreement. In any event, Defendants' allegations about incapacity are conclusory and lack any indication that they are based on personal knowledge; thus, they are not admissible in evidence and they do not satisfy the "extremely heavy" burden that a party has in demonstrating incapacity under New York law. *Rivera v. Sovereign Bank*, 976 F. Supp. 2d 270, 273 (E.D.N.Y. 2013); *see also Harrison v. Grobe*, 984 F.2d 594 (2d Cir. 1993).

Finally, Defendants argue that Plaintiff made it "impossible" for Defendants to pay Plaintiff the royalties at issue because Plaintiff refused to provide Defendants with certain accountings. *See* Machat Decl. ¶¶ 89–93, 95, 97–105. To the extent that Defendants intended to argue that they are excused from their contractual obligations because Plaintiff breached the implied duty of good faith and fair dealing, *see, e.g.*, *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153–54 (2002); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 368 (S.D.N.Y. 2016), or on grounds of equitable estoppel, *see, e.g.*, *Mattis v. Zheng*, No. 05-CV-2924, 2006 WL 3155843, at *4 (S.D.N.Y. Oct. 27, 2006), their argument would fail. Defendants provide no non-conclusory explanation as to *how* Plaintiff's failure to provide certain accountings made it "impossible" for them to fulfill their payment obligations. Indeed, although Plaintiff asserts that Defendants failed to pay him royalties earned in connection with *Unknown Memory* and the other Existing Materials, some of the accountings at issue appear to relate to entirely different revenue streams, including a deal to merchandise toy figures of Plaintiff, *see* Machat Decl. ¶¶ 59, 89–90, a deal involving performances on YouTube, *see id.* ¶ 100, and deals relating to Plaintiff's performance tours, *see id.* ¶ 101. Accordingly,

Defendants have failed to offer a factual basis to infer that Plaintiff's conduct excused their failure to pay royalties as required by the Settlement Agreement.

For these reasons, even if Defendants had articulated the legal basis for their defenses to Plaintiff's breach of contract claim, and even if Defendants had not waived these defenses by failing to plead them in their Answer, all of their defenses would fail. Because summary judgment is granted to Plaintiff as to liability for breach of contract, Defendants will not be permitted to raise these defenses at trial.

### IV. Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims Is Granted in Part and Denied in Part

Although the basis for Defendants' counterclaims is far from clear, Defendants appear to allege that Plaintiff breached the Settlement Agreement and other agreements that the parties had previously entered into. *See* Defs.' Ans. ¶¶ 157–168. Plaintiff moves for summary judgment on the counterclaims.

To the extent that Defendants' counterclaims arise out of agreements that the parties entered into prior to their execution of the Settlement Agreement, *see, e.g.*, *id.* ¶¶ 123, 126–128, 131–134, 158, 160, those claims are barred by the Settlement Agreement's general release provisions. *See* Settlement Agreement §§ 1, 3, 5(b). Indeed, the Settlement Agreement specifically stated that all prior agreements were to be "terminated ab initio," *id.* § 1, and it released Plaintiff from "any and all claims" other than those relating to the Settlement Agreement, *id.* § 3(a). "Courts applying New York law will enforce valid releases that are clear and unambiguous on their face and which were knowingly and voluntarily entered into and were not 'the product of fraud, duress, or undue influence.'" *Hummel v. AstraZeneca LP*, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (collecting cases); *see also Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997). The party "seeking to set aside a release bears the burden" of

showing that the release is unenforceable. *Hummel*, 575 F. Supp. 2d at 570. Defendants offer no non-conclusory basis to infer that the Settlement Agreement's release provisions are invalid. Accordingly, to the extent that either of Defendants' counterclaims arise out of agreements that were entered into prior to the execution of the Settlement Agreement, Plaintiff's motion for summary judgment is GRANTED.

Defendants also allege that Plaintiff breached the Settlement Agreement by failing to pay them their share of the Existing Materials royalties, as required by § 2(b) of the Settlement Agreement. *See* Defs.' Ans. ¶ 158. The Settlement Agreement, however, expressly conditioned Plaintiff's obligation to make those payments on Defendants' not being in breach of the Settlement Agreement and on Defendants' paying Plaintiff *his* share of any Existing Materials royalties that Defendants received pursuant to the Redeye-HIT Agreement. *See* Settlement Agreement § 2(b) (Plaintiff agrees to share royalties that he receives with Defendants, "[p]rovided that" Defendants are "not in breach of this Agreement" and "subject to" Defendants' obligation to remit a share of royalties that they receive to Plaintiff). The language used in the Settlement Agreement ("provided that" and "subject to") creates a condition precedent under New York law. *See Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016); *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 348 (S.D.N.Y. 2013). "[T]he obligations of a contract do not become binding on the parties until any conditions precedent described in the agreement have occurred." *Eastman Kodak*, 936 F. Supp. 2d at 348. The party claiming breach of contract (here, Defendants) bears the burden of showing that a condition precedent does not apply. *See id.* As the Court has discussed, it is undisputed that Defendants breached the Settlement Agreement, both by failing to provide Plaintiff with accounting materials and by failing to pay Plaintiff the royalties that he was due. Defendants

offer no non-conclusory argument to the contrary. Accordingly, to the extent that Defendants allege that Plaintiff breached § 2(b) of the Settlement Agreement, Plaintiff's motion for summary judgment is GRANTED.[9]

Defendants also allege that Plaintiff breached § 2(d) of the Settlement Agreement, which requires Plaintiff to instruct his record distributors to remit to Defendants certain accountings and payments. *See* Defs.' Ans. ¶ 160; Machat Decl. ¶ 105. Plaintiff has moved for summary judgment on this counterclaim, *see* Pl.'s Mem. of Law at 15–18, but Plaintiff has offered no evidence—let alone, undisputed evidence—that he complied with this provision of the Settlement Agreement. Indeed, as the Court has discussed, the record is ambiguous regarding which accountings each side has provided to the other. Accordingly, to the extent that Defendants allege that Plaintiff breached § 2(d) of the Settlement Agreement, Plaintiff's motion for summary judgment is DENIED.[10]

For all the foregoing reasons, Plaintiff's motion for summary judgment on Defendants' counterclaims is GRANTED as to all parts of the counterclaims except those arising out of Plaintiff's alleged breach of § 2(d) of the Settlement Agreement, as to which Plaintiff's motion is DENIED.

## V. Plaintiff's Remaining Claims

In addition to his claim for breach of contract, Plaintiff also brings claims for copyright infringement, a declaratory judgment, and an accounting. *See* Compl. Plaintiff states that these claims have been at least partially resolved by the parties' stipulated permanent injunction.

---

[9] Release and failure to satisfy a condition precedent are affirmative defenses, but, unlike Defendants, Plaintiff properly pleaded these defenses in his Answer. *See* Pl.'s Ans., Dkt. 24, at 10.

[10] The Court notes, however, that the Settlement Agreement provides for specific procedures to remedy any breaches of this provision, *see* Settlement Agreement § 2(d); accordingly, in order to prevail on this counterclaim, Defendants may need to show that they complied with these procedures.

15

*See* Pl.'s Mem. of Law at 9 n.5. Plaintiff also states that he has not sought summary judgment on "all of his claims" or "all of his damages." *Id.* at 1 n.1. Plaintiff, however, has not specified which parts of his claims remain outstanding.

Accordingly, the parties must appear for a conference with this Court on **April 5, 2019 at 10:00 a.m.** in Courtroom 443 of the Thurgood Marshall U.S. Courthouse, in order to discuss the claims that remain to be tried in this case. No later than **March 28, 2019**, the parties must submit a joint letter proposing three possible dates for trial, the earliest being not before **June 3, 2019** and the latest being not later than **August 12, 2019**. The letter must also specify what claims remain to be tried, the remedy that each party seeks for the outstanding claims, the prospects for settlement, and any other matters that the parties wish to discuss at the April 5, 2019 conference.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. As to Plaintiff's claim for breach of contract, the motion is GRANTED as to liability but DENIED as to damages. As to Defendants' counterclaims, the motion is GRANTED in all respects except the allegation that Plaintiff breached § 2(d) of the Settlement Agreement.

The parties must appear for a conference with this Court on **April 5, 2019 at 10:00 a.m.** in Courtroom 443 of the Thurgood Marshall U.S. Courthouse.  No later than **March 28, 2019**, the parties must submit a joint pre-conference letter, as set forth above.

The Clerk of Court is respectfully directed to CLOSE the open motions at Dkts. 35 and 52.

**SO ORDERED.**

**Date: March 15, 2019**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**